# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| CHANGE CAPITAL MANAGEMENT, LLC,<br><br>           Plaintiff,<br><br>v.<br><br>THE CHANGE COMPANY CDFI LLC and CHANGE LENDING, LLC,<br><br>           Defendants. | Case No: 8:24-cv-00050-DOC-ADS<br><br>**STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION**<br><br>**[DISCOVERY DOCUMENT: REFERRED TO MAGISTRATE JUDGE AUTUMN D. SPAETH]** |

**I.    PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Local Rules, this Court's Standing Order on Discovery Disputes, and any other applicable orders and rules. Nothing in this order is intended to alter or affect any party's rights or obligations under any order by the assigned District Judge, but shall be construed instead, wherever possible, as consistent with any order by the assigned District Judge.

## II. COOPERATION

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Standing Order on Discovery Disputes, the Federal Rules of Civil Procedure, and the Local Rules of this Court. The parties acknowledge that they have reviewed and shall reference the Court's Checklist for Conference of Counsel Regarding ESI during any Rule 26 conference and when seeking to resolve discovery disputes about ESI during meet-and-confer conferences.

As in all cases, costs may be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26. Likewise, a party's nonresponsive or dilatory discovery tactics are cost-shifting considerations. A party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

## III. DATA SOURCES AND PRODUCTION FORMAT

The following data sources are not considered reasonably accessible and will not be discoverable or subject to retention or preservation, given the disproportionate cost of retaining, maintaining, searching, and reviewing the categories in comparison to the information contained therein: employee SMS or "text" messages; instant messages; employee electronic calendar entries; information stored in personal data assistants (PDS); "deleted," "slack," "fragmented," or "unallocated" data on hard drives; random access memory (RAM) or other ephemeral data; on-line access data such as temporary internet files, history, cache, cookies, etc.; data in metadata fields that are frequently updated automatically, such as last opened data, and not specifically required in **Appendix A**; backup data that is substantially duplicative of data that is more accessible elsewhere; and other forms of ESI whose preservation requires extraordinary affirmative measure that are not utilized in the ordinary course of business.

The parties are to produce responsive ESI intact at the family level, including

all attachments; however, a party need not produce attachments to items included on a privilege log unless those items are responsive, unique, material, non-duplicative and not privileged.

## IV.   SEARCH PROCEDURE

A.   Email production requests shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms and proper timeframe.

B.   Each requesting party shall limit its email production requests to a total of eight custodians per producing party for all such requests. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional custodians, upon showing a distinct need based on the size, complexity, and issues of this specific case. Should a party serve email production requests for additional custodians beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, the requesting party may bear all reasonable costs caused by such additional discovery.

C.   Each requesting party shall limit its email production requests to a total of five search terms per custodian per party. The parties may jointly agree to modify this limit without the Court's leave.  The Court shall consider contested requests for additional search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case. The Court encourages the parties to confer on a process to test the efficacy of the search terms. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word.

Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery. In the requests for the production of electronic mail, the requesting party shall include the relevant timeframe for which the producing party must search for discoverable electronic mail for each custodian. Once the producing party has applied the search terms to each identified custodian for the requested time frame(s), the parties will discuss the number of results. At that time, the parties will discuss a number at which email search results are capped, if necessary to avoid undue burden on the producing party. If the producing party's search results exceeds the agreed upon number after limiting it by time frame and search terms, the parties will work in good fair to renegotiate the time frame and/or search terms to make the discovery less burdensome. If the parties are unable to reach an agreement with regard to the number at which email search results should be capped, the producing party may move for a protective order that requests narrower search terms. Should a party serve email production requests with search terms beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, this shall be considered in determining whether any party shall bear all reasonable costs caused by such additional discovery.

      D.    The receiving party must not use ESI that the producing party asserts is attorney-client privileged or protected work product to challenge the privilege or protection.

      E.    Nothing in this Order prevents the parties from agreeing to use technology assisted review and other techniques insofar as their use improves the efficacy of discovery.

      F.    In responding to General ESI and email production requests under Fed. R. Civ. P. 34 and 45, the parties will comply with the specifications set forth in **Appendix A**, absent a showing of good cause.

      G.    The parties are not obligated to produce duplicates of the same electronic

document or electronic mail file so long as the metadata is the same.

H. The parties are not obligated to search archives or repositories that contain electronic documents with creation or modification dates that indicate that the documents are not relevant to any claims or defenses in this case.

## V. PHASED DISCOVERY

General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include email or other forms of electronic correspondence (collectively "email"). To obtain email parties must propound specific email production requests. Email production requests shall only be propounded for specific issues, rather than general discovery of a product or business.

Email production requests shall be phased to occur after the parties have exchanged initial disclosures and basic documentation about the patents, the prior art, the accused instrumentalities, and the relevant finances. While this provision does not require the production of such information, the Court encourages prompt and early production of this information to promote efficient and economical streamlining of the case.

## VI. DOCUMENTS PROTECTED FROM DISCOVERY

A. Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. Nothing contained herein, however, is intended to limit a party's right to conduct a review of ESI for relevance, responsiveness and/or privilege or other protection from discovery.

B. The mere production of ESI in a litigation as part of a mass production will not itself constitute a waiver for any purpose.

C. In no event shall this stipulation be construed to negate a party's assertion of privilege or attorney-work product as to any ESI, nor to waive any appropriate objection as to relevance, proportionality or overbreadth. ESI that contains privileged

information or attorney-work product shall be immediately returned if the documents appear on their face to have been inadvertently produced or if there is notice of the inadvertent production within thirty (30) days of such. In all other circumstances, Fed. R. Civ. P. 26(b)(5)(B) shall apply.

   D. Communications involving trial counsel that post-date the filing of the complaint need not be placed on a privilege log. Communications may be identified on a privilege log by category, rather than individually, if appropriate.

**VII.   MODIFICATION**

   This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

# APPENDIX A

**IMAGES**

The parties agree to produce electronic documents, except for those set forth in Subsection (b) below, in single page 300 dpi group IV (1 bit) TIFF format for black/white documents and single page JPG format for color documents. The parties agree to produce paper and hard copy documents in single page 300 dpi group IV (1 bit) TIFF format for black/white documents and single page JPG format for color documents.

The parties may produce in black/white if the color is not necessary to efficiently review or interpret the document. The receiving party may request copies of specific documents in color.

TIFF files shall be named as e.g., "<PageID>.TIF" with no spaces in the file name. JPG images shall be named as e.g., "<PageID>.JPG" with no spaces in the file name.

Produced images will be provided in a folder called "IMAGES" on the production media. All TIFF/JPG images for a single document will be in one subfolder within the IMAGES folder, and the number of image files in any one subfolder will not exceed 1000.

Each image shall be branded with the unique Bates number and the confidentiality designation, if any.

The parties each reserve the right to request and receive native files for produced image records where visibility, usability, or functionality is impaired by the image/extracted text formatting.

**NATIVE FILES**

File types which do not render in a usable manner when converted to image with extracted text, such as Microsoft Excel, spreadsheets, audio or video files, CAD/drawing files, multimedia files, and any other similar file types which may necessitate the need to review natively shall be produced in native format.

All native files must have a corresponding image placeholder with the correct Bates Begin number and confidentiality designation, if any, and information in the relevant load file sufficient to permit the native files to be associated with the relevant metadata.

The file name of each native file with equal the production BATESBEG number of the corresponding page and have the same file extension as the original, with a corresponding path reference appearing in the File-Path field of the load file. Natives files will be provided in a folder called "NATIVES" on the production media.

The parties each reserve the right to request and receive native files for produced records where visibility, usability, or functionality is impaired by image/extracted text formatting.

**BATES STAMPING**

The parties agree to stamp every document produced with a unique Bates number. Bates numbers must be a constant length that is zero padded (e.g., ABC0000001). Bates numbers cannot contain space. Bates numbers must be sequential within a document. If a Bates number is skipped, that number should be contained in the privilege log or the responding party must notify the requesting party of the skipped Bates range.

**TEXT FILES**

Extracted text will be produced, if possible, for all ESI records and all imaged hard copy documents in a document level, multi-page text file format, with a corresponding path reference appearing in the Text Precedence field of the load file. If a record does not have extractable text, then an industry-standard optical character recognition process will be executed, and OCR-rendered text will be provided in the multi-page text file instead.

The file name of each text file will equal the production BEGBATES number of the corresponding page and have a .txt file extension. The text files will be provided in a folder called "TEXT" on the production media.

**CONFIDENTIALITY DESIGNATIONS**

Responsive documents in TIFF or JPG format shall be stamped with the appropriate confidentiality designation in the left footer in accordance with the Stipulated Protective Order in this matter. Each responsive document produced in native format shall have its confidentiality designation stamped in the left footer of the corresponding image placeholder. Confidentiality designations shall be included in the metadata fields provided in the load files.

**DATA AND IMAGE LOAD FILES**

Associated metadata and links to the .txt files and native files, where applicable, for each produced record will be provided in a document level delimited load file format (".dat"). This load file shall have a header row, with each line representing one document.

All of the metadata field information that is available from the native ESI source files will be extracted therefrom and will not be altered or modified from the original. The metadata provided in the .dat load file shall include the following fields:

| FIELD NAME | CONTENTS |
|---|---|
| BATESBEG | Beginning production number |
| BATESEND | Ending production number |
| BEGATTACH | Beginning production number of parent in a family |
| ENDATTACH | Ending production number of last page of the last attachment in a family |
| ATTACHCOUNT | Number of attachments |
| PAGECOUNT | Number of pages in document for documents produced in TIFF/JPG form. For documents produced in native, page count will be 1 (for placeholder). |
| CUSTODIAN | Custodian that possessed the document, email, or |

| FIELD NAME | CONTENTS |
|---|---|
|  | electronic file |
| DUPLICATE CUSTODIANS | Other custodian(s) that possessed the document, email, or electronic file; multiple custodians separated by semicolon |
| FILE NAME | Native of original electronic file as collected |
| EMAIL SUBJECT | Subject field extracted from email message |
| FILEEXT | File extension for email or electronic document |
| FILESIZE | Size of application file document/email in KB |
| ORIGINALFOLDERPATH | Original source file path for the record produced |
| MD5HASH | Unique electronic signature hash value of email or electronic file |
| SHA1HASH | Unique electronic signature hash value of email or electronic file |
| AUTHOR | Author information as derived from the properties of the document |
| TITLE | Title of the document as derived from the properties of the document |
| DATE CREATED | Date non-email electronic file was created as extracted from file system metadata (mm/dd/yyyy format) |
| TIME CREATED | Time non-email electronic file was created as extracted from file system metadata (hh:mm format) |
| DATE LAST MOD | Date non-email electronic file was modified as extracted from file system metadata (mm/dd/yyyy format) |
| TIME LAST MOD | Time non-email electronic file was modified as extracted from file system metadata (hh:mm format) |
| EMAIL FROM | "From" field as extracted from email message |
| EMAIL TO | "To" field as extracted from email message |

| FIELD NAME | CONTENTS |
|---|---|
| EMAIL CC | "CC" or "carbon copy" field as extracted from email message |
| EMAIL BCC | "BCC" or "blind carbon copy" field as extracted from email message |
| DATE SENT | Sent date of email message (mm/dd/yyyy format) |
| TIME SENT | Sent time of email message, time zone set to UTC (hh:mm format) |
| DATE RECEIVED | Received date of email message (mm/dd/yyyy format) |
| TIME RECEIVED | Received time of email message, time zone set to UTC (hh:mm format) |
| TIMEOFFSET | Relativity Native Time Zone Offset |
| CONFIDENTIALITY | Text of Confidentiality Designation, if any, in language as provided by the Stipulated Protective Order |
| MARKUP SET – PRODUCTION MARKUP | Identifies whether a document contains redactions |
| TEXT PRECEDENCE | Relative File Path to *.txt file containing Extracted or OCR text within the TEXT folder |
| FILE_PATH | Relative file page to each native file on production media provided within the NATIVES folder |

The parties agree that each party may use the standard field names as they appear in their eDiscovery review software database, provided that the contents of such fields remain consistent as those outlined in the table above.

A properly formatted image load file (".opt") will be provided with the TIFF/JPG images as a page level delimited load file to load images, with each line representing one image. This load file shall have ANSI/Western European encoding.

Metadata and image load files (.dat and .opt) will be provided in a folder called "DATA" on the production media.

**TIME ZONE**

The time stamps and metadata for all records shall be normalized to UTC.

**HIDDEN CONTENT AND TRACKED CHANGES**

Microsoft Word and other word processing files will be rendered to TIFF/JPG images so as to show tracked changes, hidden text, comments, headers, and field codes. Microsoft PowerPoint and other presentation slides will be rendered to TIFF/JPG images with full page slides, with all hidden slides and comments visible, and with any notes and/or summaries appended at the end.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: August 9, 2024                                   Respectfully Submitted,

By: */s/ Brendan R. Zee-Cheng*                          By: */s/ Jonathan C. Cahill (with permission)*
Mhare Mouradian (SBN 233813)                            Ian A. Rambarran, Bar No. 227366
mhare.mouradian@huschblackwell.com                      irambarran@Klinedinstlaw.com
L. Scott Oliver (SBN 174824)                            Jonathan C. Cahill, Bar No. 287260
scott.oliver@huschblackwell.com                         jcahill@klinedinstlaw.com
HUSCH BLACKWELL LLP                                     KLINEDINST PC
355 South Grand, Suite 2850                             801 K Street, Suite 2100
Los Angeles, CA 90071                                   Sacramento, California 95814
213.337.6550 Telephone                                  (916) 282-0100/FAX (916) 444-7544
213.337.6551 Fax

Jennifer E. Hoekel (*pro hac vice*)                     **Attorneys for THE CHANGE COMPANY**
jennifer.hoekel@huschblackwell.com                      **CDFI LLC and CHANGE LENDING, LLC**
Brendan R. Zee-Cheng (*pro hac vice*)
brendan.zee-cheng@huschblackwell.com
HUSCH BLACKWELL LLP
8001 Forsyth Blvd., Suite 1500
St. Louis, MO 63105
314-480-1500 Telephone
314-480-1505 Facsimile

**Attorneys for Plaintiff Change Capital Management LLC**

# FILER'S ATTESTATION

In compliance with Civil L.R. Rule 5-4.3.4(a)(2)(i), I hereby attest that all parties have concurred in the filing of this Stipulation.

By: */s/ Brendan R. Zee-Cheng*

**IT IS ORDERED** that the forgoing Agreement is approved.

Dated: 08/29/2024                                       /s/ Autumn D. Spaeth

                                                        HONORABLE AUTUMN D. SPAETH
                                                        United States Magistrate Judge